Queen City Tours® vs. Queen City Rides, et al.

Case No. [Pending]

# UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NORTH CAROLINA

FILED
CHARLOTTE, NC

MAR 2 0 2024

US DISTRICT COURT
WESTERN DISTRICT OF NC

Juan D. Whipple, dba Queen City Tours®

Plaintiff, v.

Kevin Marcus dba Queen City Rides 1, LLC, Defendant 1; Lance Zaal, US Ghost Adventures, LLC, dba Queen City Ghosts, Defendant 2; Tripadvisor LLC/Viator, Defendant 3

*Defendants.*

Civil Action No.: [To be assigned]    3:24-cv-325

## COMPLAINT FOR TRADEMARK INFRINGEMENT

## I. INTRODUCTION

### A. Plaintiff Overview

The Plaintiff holds rights to the "Queen City Tours®" trademark, which has been in consistent use since 1995 and will be referred to either by its full name or as The "Mark" throughout this document. Recognized through robust marketing, media, and community word-of-mouth locally, and expanded globally via the Internet and social media, The "Mark's" extensive and sustained use, supported by state and federal registrations, affirms the Plaintiff's exclusive rights. These rights are bolstered by proactive efforts to maintain The "Mark's" integrity and market distinctiveness. The Plaintiff's long-standing use and legal safeguards at both state and federal levels solidify their exclusive claim to The "Mark." This dedication underscores the Plaintiff's commitment to protecting The "Mark."

### B. Defendants Identification

Queen City Tours® vs. Queen City Rides, et al.

Case No. [Pending]

1. Defendant 1: Identification and brief description of defendant

   Queen City Rides, located in Charlotte, offers eco-friendly golf cart and van tours focused on the city's history, nightlife, and breweries, highlighting their hospitality experience and commitment to customer service. For more information, see their website: https://queencityrides.com.

2. Defendant 2: Identification and brief description of defendant

   Queen City Ghosts provides ghost tours in Uptown Charlotte, highlighting haunted history, ghost sightings, and paranormal stories. They blend historical education with entertainment across haunted city sites. More details at their website: https://queencityghosts.com.

3. Defendant 3: Identification and brief description of defendant

   Tripadvisor, a leading travel platform, offers reviews, bookings, and advice on a wide range of travel services. It's renowned for user-generated content that guides travelers in making informed decisions. The site is crucial for discovering, planning, and booking travel experiences, emphasizing tours and activities through extensive user reviews. Further information is available on their website: https://tripadvisor.com.

## II. JURISDICTION AND VENUE

### A. Court Jurisdiction

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this case involves a federal question arising under the laws of the United States, specifically the Lanham Act, 15 U.S.C. §§ 1051 et seq. The Lanham Act governs trademarks, service marks, and unfair competition, and is the federal statute under which the Plaintiff's claims arise.

Queen City Tours® vs. Queen City Rides, et al.

Case No. [Pending]

Additionally, jurisdiction is supported by 28 U.S.C. § 1338(a), which grants federal district courts exclusive jurisdiction over any case of trademark infringement where the trademarks in question are registered with the United States Patent and Trademark Office. As the Plaintiff's trademark Queen City Tours® is duly registered with the USPTO, this statute further substantiates the Court's jurisdiction over the matter. Furthermore, the allegations of trademark infringement and the resulting interstate commercial impact fall squarely within the purview of federal jurisdiction, as they directly implicate the rights and regulations established under the Lanham Act.

## B. Venue Appropriateness

Venue is proper in this Court as per 28 U.S.C. § 1391(b) and § 1391(c), due to the location of the events leading to the claims and the Defendants' actions within this district. The infringement involving the Plaintiff's federally registered trademark occurred here, making it suitable for this Court's jurisdiction. Additionally, Defendants reside in or are linked to significant activities in this district, aligning with federal venue statutes. Thus, this Court is appropriately designated to resolve this dispute, supported by federal law and the specific circumstances of this case.

## III. FACTUAL BACKGROUND

### A. Trademark Details

The Plaintiff's use of The "Mark" is established with a substantial historical record, dating between 1993 and 1995, demonstrating a longstanding and continuous use in commerce. *"See Exhibit 1 (Plaintiff's Track Record Documents, pp. 1-14)."* The "Mark" was first registered in the State of North Carolina on January 19, 1999, under Registration Number T15405. *"See*

Queen City Tours® vs. Queen City Rides, et al.

Case No. [Pending]

*Exhibit 2 (Plaintiff's Trade/Service Mark Document/NC)."* This early state registration signifies the Plaintiff's commitment to establishing and protecting The "Mark" within the local commerce of North Carolina. Subsequent to the state registration, The "Mark" was registered with the United States Patent and Trademark Office (USPTO) on November 25, 2008, under Serial Number 77266102. *"See Exhibit 3 (Plaintiff's Trade/Service Mark Documents/USPTO)."* This registration was a strategic expansion of the Plaintiff's rights, ensuring federal protection of The "Mark." In 2013, the Plaintiff made a calculated decision, grounded in economic considerations, to rely on the strength of the North Carolina registration in lieu of seeking a Section 15 declaration for incontestability under the Lanham Act. This decision, while economically driven, did not diminish the validity or enforceability of the Plaintiff's rights in The "Mark." On February 7, 2023, the Plaintiff, with advice from counsel further solidified their rights with a subsequent USPTO registration under Serial Number 90859136. *"See Exhibit 4 (Plaintiff's Trade/Service Mark Documents/USPTO)."* This registration is demonstrative of the Plaintiff's ongoing use and enforcement of The "Mark." Plaintiff's completion of history courses and authorship of books related to the "Queen City Tours® Mark," through esteemed institutions like Central Piedmont Community College and the University of North Carolina Charlotte, underscore the mark's distinctiveness. This academic and literary contribution enhances the mark's recognition beyond mere tour services, affirming its unique standing in the market. *"See Exhibit 5 (Plaintiff's Related College Courses Completed, pp. 1-2)."*

**B. Trademark Usage**

Throughout the duration of its existence, The "Mark" has been substantially used in commerce, both locally and internationally. Locally, The "Mark" has gained significant recognition through consistent marketing channels to include the distribution of flyers to area

Queen City Tours® vs. Queen City Rides, et al.

Case No. [Pending]

hotels, fax (during that era), media exposure, and word-of-mouth endorsements within the community. Additionally, the Plaintiff has been consistently rated A-A+ by the Better Business Bureau for over a decade, reflecting the high standard of services associated with The "Mark." Internationally, the Plaintiff has leveraged the power of the Internet and social media platforms to promote The "Mark," extending its reach and recognition beyond geographical boundaries. The Plaintiff asserts that the sustained and extensive use of The "Mark," coupled with its state and federal registrations, establishes a clear and enforceable right to the exclusive use of The "Mark" in connection with the services provided. This right is further bolstered by the Plaintiff's proactive measures to maintain and protect The "Mark's" integrity and distinctiveness in the market. In conclusion, the Plaintiff's longstanding and consistent use of The "Mark," combined with strategic legal protections obtained at both the state and federal levels, firmly establish the Plaintiff's exclusive rights and interests in the "Queen City Tours® Mark." This history and the subsequent actions undertaken by the Plaintiff underscore the seriousness with which these rights are held and defended. *"See Exhibit 6 (More Track Record Documents, Plaintiff, pp. 1-7)."*

## C. Explanation of 2(f) Designation

The 2(f) designation marks a turning point for descriptive marks that achieve distinctiveness through use, granting them full Lanham Act protection. This status bolsters the "Queen City Tours®" mark's defense, in use since 1995, shifting the burden to defendants to show no confusion. It highlights the importance of enforcing the Plaintiff's 2(f) rights to prevent economic and reputational harm and dilution, as acknowledged by the USPTO.

## D. Future Service Expansion Plans

Queen City Tours® vs. Queen City Rides, et al.

Case No. [Pending]

The Plaintiff aims to launch Golf Cart Tours under "The Mark Queen City Tours®," leveraging over thirty years of Charlotte tour market expertise for safer, innovative experiences. This expansion showcases the Plaintiff's dedication to meeting market needs and enhancing The "Mark's" distinctiveness. *See Exhibit 7 (Queen City Golf Cart Tours^sm Promo)."*

## IV. DEFENDANTS' CLAIMS AND PLAINTIFF'S REBUTTALS

### A. Defendants' Claims on Descriptiveness of Trademark

1. Assertion of Mere Descriptiveness by Defendants 1 and 2

   Defendants 1 and 2 argue "Queen City" is too descriptive and common in Charlotte to confuse consumers. They claim its widespread use in business and tours doesn't cause confusion about service source or affiliation, suggesting its generic use reduces its distinctiveness as a service identifier.

2. Plaintiff's Counterargument on Distinctiveness

   Contrary to the Defendants' assertion, the Plaintiff's "Queen City Tours®" trademark has transcended mere descriptiveness through continuous and exclusive use since 1995, establishing a strong secondary meaning and distinctiveness. The evidence of consumer confusion, including documented communications since 2017, robustly challenges the Defendants' claim. These incidents show that a considerable number of prudent consumers have been misled, clearly attributing distinctive qualities to the Plaintiff's mark, despite the generic use of "Queen City." The Plaintiff's mark, therefore, warrants full legal protection under trademark law, which recognizes and safeguards marks that have acquired distinctiveness and secondary meaning, irrespective of their original descriptiveness. Plaintiff's longstanding market presence establishes that the

Queen City Tours® vs. Queen City Rides, et al.

Case No. [Pending]

designation of Charlotte as "The Queen City" was not commonly used by consumers before 1995. This experience predates Defendants' entrance into the market, underscoring Plaintiff's mark's distinctiveness, and its association with Plaintiff's services alone.

## B. Defendants' Fair Use Defense

1. Defendant 3 claims nominative fair use for using "Queen City" in selling tickets for Defendants 1 and 2's tours, arguing it's essential for identifying services without suggesting endorsement by "Queen City Tours®." This use is said to ensure clarity and not mislead regarding the trademark's source.

2. The Plaintiff counters Defendant 3's fair use defense, showing their ticket sales under "Queen City" cause confusion beyond mere identification. The Plaintiff provides evidence that consumers mistakenly associate Defendant 3's marketed tours with the Plaintiff, exceeding nominative fair use by leveraging the Plaintiff's trademark reputation, leading to dilution and economic harm. This undermines Defendant 3's fair use claim.

## V. PRECEDENT AND LEGAL FRAMEWORK FOR DISTINCTIVENESS AND FAIR USE

## A. Legal Standards for Distinctiveness of Descriptive Marks

In U.S. trademark law, as interpreted by the Supreme Court, descriptive marks occupy a unique position on the spectrum of trademark distinctiveness. While inherently lacking the immediate source-identifying characteristic of fanciful, arbitrary, or suggestive marks, descriptive marks can attain trademark protection through the acquisition of secondary meaning.

Queen City Tours® vs. Queen City Rides, et al.

Case No. [Pending]

Secondary meaning arises when the consuming public primarily associates the descriptive term with a specific commercial source, rather than the product or service category as a whole. This acquired distinctiveness transforms the otherwise ineligible descriptive mark into a protectable trademark under the Lanham Act. The burden falls on The "Mark" holder to demonstrate that through extensive and continuous use, advertising, and consumer recognition, the descriptive term has become synonymous in the public mind with The "Mark" holder's goods or services. This legal standard ensures that descriptive marks, once they achieve this critical threshold of secondary meaning, are afforded the same level of protection as inherently distinctive marks.

**B. Legal Framework for Nominative Fair Use in Trademark Law**

*Nominative fair use allows using another's trademark for product/service identification* when necessary and without implying endorsement. Criteria include: (1) necessity for identification, (2) minimal use, and (3) no suggestion of sponsorship. This doctrine balances trademark rights with public information clarity, ensuring trademarks can be used for commentary or advertising without infringing rights or causing consumer confusion, supporting free speech and fair competition.

**C. Precedent Cases Upholding Distinctiveness and Addressing Fair Use**

1. Qualitex Co. v. Jacobson Products Co., Inc., 514 U.S. 159 (1995):

   This case established that colors can be trademarked if they acquire secondary meaning and are not functional, reinforcing the scope of trademark protection.

2. Polaroid Corp. v. Polarad Elects. Corp., 287 F.2d 492 (2d Cir. 1961):

Queen City Tours® vs. Queen City Rides, et al.

Case No. [Pending]

In a dispute over similar names, the court favored Polaroid, recognizing consumer

confusion and trademark dilution despite Polarad's descriptive use claim. This

highlighted the limits of fair use against strong, established trademarks.

3.  Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763 (1992):

The Supreme Court ruled that trade dress, like a restaurant's distinctive décor, is

protectable under the Lanham Act without needing to prove secondary meaning,

affirming robust trademark protection.

## D. Application of Legal Standards to Plaintiff's Queen City Tours® Trademark

In the case of the Plaintiff's "Queen City Tours®" trademark, the defense of fair use

claimed by Defendant 3 necessitates a careful examination in light of the trademark's established

distinctiveness and the documented proof of consumer confusion. Despite the Defendant's claim

of fair use, the substantial evidence showing confusion among consumers directly challenges this

assertion. The trademark, in use since 1995, has developed a strong secondary meaning in

Charlotte, NC, which is undermined by the Defendant's actions. The harm caused to the Plaintiff,

as evidenced by the confusion over the source of services, contradicts the Defendant's fair use

defense. This goes beyond mere descriptive use and enters the realm of infringement, as the

Defendant's use of a similar mark has led to tangible damage to the Plaintiff's economic interests

and brand reputation. The legal standards applied here suggest that the Defendant's claim of fair

use does not hold up against the backdrop of the trademark's established distinctiveness and the

clear evidence of consumer confusion and resultant harm, thereby strengthening the Plaintiff's

case against the Defendant.

## VI. DEFENDANTS' ALLEGED INFRINGEMENTS

Queen City Tours® vs. Queen City Rides, et al.

Case No. [Pending]

## A. Defendant 1: Specific infringement actions

On December 15, 2023, an incident of direct infringement occurred, clearly demonstrating the nature of the confusion caused by the Defendants' unauthorized use of the Plaintiff's trademark. The Plaintiff purchased a ticket for a tour of Charlotte, NC, scheduled for December 18, 2023. This transaction was conducted through the Tripadvisor website and processed by Viator, a wholly-owned subsidiary. *"See Exhibit 8 (SEC Forms S-8, 10K, pp. 1-3)."* The critical point of infringement lies in the fact that the operator of the tour was listed as "Queen City Rides" on the ticket, bearing the Booking reference number BR-1091757907. *"See Exhibit 9 (Booking Confirmation/Defendant 1)."* This specific use of "Queen City Rides" in direct connection with a tour service in Charlotte, NC, mirrors the nature of services provided under the Plaintiff's federally registered trademark, Queen City Tours®.

## B. Defendant 2: Specific Infringement Actions

The Plaintiff, operating under "Queen City Ghost Tours^sm" since 2010, has established a significant presence in Charlotte, NC. On December 15, 2023, the Plaintiff bought a ticket for a December 26, 2023, ghost tour operated by "Queen City Ghosts," as per ticket reference BR-1091765267, *"See Exhibit 10 (Booking Confirmation/Defendant 2),"* infringing on the Plaintiff's use of the "Queen City Ghost Tours^sm" mark and their registered "Queen City Tours®" trademark. The similarity between "Queen City Ghosts" and the Plaintiff's marks has led to consumer confusion, violating common law trademark rights and 15 U.S.C. § 1114 and § 1125(a) due to the overlap in services offered. Courts have applied essentially the same likelihood of confusion standard to claims for common law trademark infringement or unfair competition (regarding trademarks) under North Carolina law. See Mobile Tech Inc. v. Invue Sec. Prods. Inc., No. 3:18-CV-00052-RJC-DSC (W.D.N.C. June 21, 2019). This action dilutes the Plaintiff's mark

Queen City Tours® vs. Queen City Rides, et al.

Case No. [Pending]

distinctiveness and harms their business, constituting infringement and necessitating legal action to safeguard the Plaintiff's rights.

## C. Defendant 3: Specific Infringement Actions

Tripadvisor, through its subsidiary Viator, plays a key role in amplifying consumer confusion with listings similar to Plaintiff's trademarks, "Queen City Rides" and "Queen City Ghosts." The platform's wide reach, with 156 million visits in September 2023 as per Statista *"See Exhibit 11 (Web Stats, Defendant 3, Statista),"* significantly extends the impact of this confusion. The presence of infringing names on such a prominent platform not only misleads consumers but also implies an endorsement of these services, exacerbating the issue. This widespread exposure contributes to the confusion around the Plaintiff's trademarks, highlighting Tripadvisor's contributory role in the infringement process. Detailed web traffic data, indicating Tripadvisor's influence, will be further explored through discovery to support claims of extensive consumer confusion facilitated by Tripadvisor's listings. This approach underscores the necessity of addressing the platform's part in spreading the infringement's effects, warranting legal scrutiny to protect the Plaintiff's interests. Defendant 3's conduct contradicts their stated intellectual property policy. Despite claiming to respect intellectual property rights on their platform, evidence shows Defendant 3 facilitated the distribution of services under marks confusingly similar to Plaintiff's, directly opposing their published commitment. This inconsistency not only undermines Defendant 3's credibility but also exacerbates consumer confusion, violating 15 U.S.C. §§ 1114 and 1125(a) by contributing to the unauthorized use of Plaintiff's trademark. *"See Exhibit 12 (Defendant 3's Intellectual Property Policy)."*

## D. Shared Marketing Channels

Queen City Tours® vs. Queen City Rides, et al.

Case No. [Pending]

Defendants 1 and 2's utilization of the same Internet-based marketing channels as the Plaintiff, notably facilitated by Defendant 3, *"See Exhibit 13 (Defendant 3's Confusingly Similar Listings)."* has significantly contributed to consumer confusion, infringing upon the Plaintiff's "Queen City Tours®" trademark rights under 15 U.S.C. §§ 1114 and 1125(a). The overlap in digital marketing strategies, particularly on platforms with extensive reach provided by Defendant 3, has diluted the distinctiveness of the Plaintiff's trademark. A typical Google search for "Queen City Tours®" often results in listings for either or both Defendants 1 and 2, further evidencing the confusion caused by the Defendants' actions. This shared use of marketing channels, leading to direct competition and consumer confusion, supports the Plaintiff's claim for trademark infringement relief.

### E. Defendants' Awareness of The Mark

In today's digital age, with advanced Internet-based technology at their disposal, all Defendants had the means and obligation to conduct thorough trademark searches prior to adopting or using any marks potentially conflicting with "The Mark Queen City Tours®." Their failure to do so, given the widespread availability of online search tools, including the USPTO's database and general Internet searches, indicates a lack of due diligence at best and willful ignorance at worst. This oversight underscores the Defendants' responsibility in the infringement, highlighting that their actions cannot be excused by a lack of awareness.

### F. Cease and Desist Notifications

1. Defendant 1:

On September 15, 2023, the Plaintiff, holding the "Queen City Tours®" USPTO trademark, sent Defendant 1 a cease-and-desist letter outlining trademark

Queen City Tours® vs. Queen City Rides, et al.

Case No. [Pending]

infringement. This letter detailed the Plaintiff's exclusive rights and Defendant 1's infringement, including Evidence of Confusion, Trademark Registration Details, Federal Laws, Case Law, and a Prior Letter From Counsel on May 30, 2023, following a June 25, 2021, infringement notice. *"See Exhibit 14 (1st Notice, Website Form; Cease and Desist Letter, Email, pp. 1-5, Defendant 1)."*

2. Defendant 2:

On September 20, 2023, Defendant 2 received a cease-and-desist email, similar to Defendant 1's, citing infringement of "Queen City Tours®" and "Queen City Ghost Tours^sm" trademarks. This letter included legal arguments, evidence, and a Previous Notification of Infringement from April 3, 2023. *"See Exhibit 15 (1st Notice, Website Form, Text, Cease and Desist Email, pp. 1-5, Defendant 2)."*

3. Defendant 3:

On September 14, 2023, Plaintiff sent Defendant 3 a cease-and-desist email, similar to those sent to Defendants 1 and 2, addressing the infringement of "Queen City Tours®" and "Queen City Ghost Tours^sm." Tailored to Defendant 3's situation, it countered their Fair Use Defense and highlighted Defendant 3's role in infringement, including a rebuttal, infringement details, and a Previous Notification of Infringement from August 2, 2023. *"See Exhibit 16 (1st Notice, Cease and Desist Letter, Email, Delivery Confirmation, pp. 1-15, Defendant 3)."*

# VII. LEGAL STATEMENT REGARDING EVIDENCE OF CONSUMER CONFUSION

## A. Detailed Account of Incidences

1. Defendant 1:

   a. Incident 1: Text Message on November 15, 2023

Queen City Tours® vs. Queen City Rides, et al.

Case No. [Pending]

The Plaintiff submits as evidence a text message received on November 15, 2023, from a potential customer expressing interest in "the Queen City Tour." The customer's confusion became evident when they were unable to distinguish between the Plaintiff's van tour service and the golf cart tours provided by Queen City Rides. This incident highlights direct consumer confusion between the two entities. *"See Exhibit 17 (Text Message, Defendant 1, dated November 15, 2023)."*

b.  Incident 2: Text Message on September 25, 2023

Further evidence of consumer confusion is presented in a text message received on September 25, 2023. The customer initially expressed a desire to take a golf cart tour of Uptown Charlotte with the Plaintiff, only to realize they intended to contact Queen City Rides. This misdirection underscores the ongoing issue of brand confusion in the Marketplace. *"See Exhibit 18 (Text Message, Defendant 1, dated September 25, 2023)."*

c.  Incident 3: Voicemail Message on July 16, 2022

The Plaintiff also presents a voicemail message from July 16, 2022, wherein a concerned citizen reported observing an unsafe golf cart tour in Uptown Charlotte. The citizen's reference to "you're gonna get somebody killed" at the 35-second mark, mistakenly attributed to the Plaintiff, indicates public misidentification, as Queen City Rides was

Queen City Tours® vs. Queen City Rides, et al.

Case No. [Pending]

the sole operator of such tours at the time. *"See Exhibit 19 (Voicemail Message, Defendant 1, dated July 16, 2022."*

2. Defendant 2:

    a. Incident 1: Facebook Message on November 1, 2023

        The Plaintiff presents a Facebook message received on November 1, 2023, from a customer inquiring about reservations for a Queen City Ghost Tour. The Plaintiff had no tours or guests booked for that night, indicating consumer confusion between the Plaintiff's and Defendant 2's services. *"See Exhibit 20 (Facebook Message, Defendant 2, dated November 1, 2023)."*

    b. Incident 2: Text Message on September 1, 2023

        Further evidence includes a text message from September 1, 2023, where a customer mentioned reservations for a Queen City Ghost Tour accessed through Expedia. The Plaintiff does not use Expedia for ticket sales, and the customer was not booked with the Plaintiff, underscoring confusion with Defendant 2's offerings. *"See Exhibit 21 (Text Message, Defendant 2, dated September 1, 2023)."*

    c. Incident 3: Text Message and Reservation Copy on July 8, 2023

        A significant instance of confusion occurred on July 8, 2023, where a customer texted the Plaintiff and provided a copy of their reservations for a Queen City Ghost tour. However, these reservations were not for the Plaintiff's tour, further highlighting the consumer confusion with

Queen City Tours® vs. Queen City Rides, et al.

Case No. [Pending]

Defendant 2's services. *"See Exhibit 22 (Text Message and Reservation Copy, Defendant 2, dated July 8, 2023, pp. 1-2)."*

3. Defendant 3:

   a. Incident 1: AI-Powered Bing Chat Bot Response on September 15, 2023

      The Plaintiff's interaction with the AI-powered Bing Chat Bot, where a query simulating a customer's search resulted in a response featuring only Defendant 1's services linked through the Tripadvisor portal, is critical evidence. This instance demonstrates how consumers seeking the Plaintiff's services are being redirected to Defendant 1, indicating a high likelihood of confusion. *"See Exhibit 23 (Bing Chat Bot Query and Response Confusion, Defendant 3, dated September 15, 2023, pp. 1-2)."*

   b. Incident 2: Text Message and Confirmation from Customer on June 25, 2023

      A text from a customer, followed by a confirmation from Defendant 2 bearing Defendant 3's trademark and logo, exemplifies direct consumer confusion. This incident not only shows confusion between the Plaintiff and Defendant 2 but also implicates Defendant 3, substantiating their role in the infringement. *"See Exhibit 24 (Customer Text and Confirmation Confusion, Defendants 2 and 3, dated June 25, 2023)."*

   c. Incident 3: Text Message on October 12, 2022

Queen City Tours® vs. Queen City Rides, et al.

Case No. [Pending]

A pivotal incident occurred on October 12, 2022, when a potential customer contacted the Plaintiff via text, seeking additional information about a "Historical Tour on the golf cart." This tour was, in fact, offered by Defendant 1. Upon being queried about which site they initially visited, the customer responded, "I guess it was through Tripadvisor." This interaction vividly demonstrates the confusion experienced by consumers – they were seeking information about Defendant 1's service but reached out to the Plaintiff, indicating a significant likelihood of confusion between the Plaintiff's and Defendant 1's services, exacerbated by the presence of both on the Tripadvisor platform. *See Exhibit 25 (Confused Customer Text Message Inquiry, Defendant's 3 and 1, dated October 12, 2022)."*

Plaintiff will submit additional evidence of consumer confusion since 2017, including incidents where consumers initially contacted Plaintiff but ceased communication upon realizing their error. This pattern indicates confusion regarding the source of services offered under similar marks by Defendants 1, 2, and 3, substantiating Plaintiff's infringement claims.

## VIII. EXPLANATION OF DELAY IN FILING SUIT

### A. Circumstances Leading to Delay

The Plaintiff's delay in legal action, influenced by evolving infringement scenarios and a ProSe approach, began with confusion in 2017 due to Defendant 1's shuttle service. Escalating confusion, exacerbated post-COVID-19 and by Defendant 1's Tripadvisor partnership, led to re-filing the trademark on legal counsel's advice. By 2023, facing Defendants' inadequate responses,

Queen City Tours® vs. Queen City Rides, et al.

Case No. [Pending]

the Plaintiff initiated litigation to protect their rights, shaped by financial limitations and strategic choices.

## B. Legal Implications of the Delay

The delay in the Plaintiff's lawsuit, potentially addressed by laches, is justified by factors such as COVID-19, infringement evolution, and strategic USPTO re-filing. These reflect deliberate efforts to manage trademark confusion and secure rights, offering a robust defense against laches claims by Defendants.

## C. Continuation of Trademark Rights Despite Delay

Despite delays, "Queen City Tours®" trademark rights remain enforceable, with use since 1995 and federal registration ensuring protection under the Lanham Act. COVID-19 and strategic re-registration underscore ongoing commitment to these rights, unaffected by external factors, safeguarding against infringement and dilution.

## IX. Discovery: Discovery Process for Further Evidence and Conclusions

The Plaintiff acknowledges the need to determine the specific timeframe when Defendants 1 and 2 began offering their services via the Tripadvisor platform. This information is crucial for establishing the duration and extent of the infringement and will be pursued through the discovery process.

## A. Legal Conclusion on Incidents of Public Confusion

1. Conclusion Regarding Defendant 1

   Evidence since 2017 shows a persistent pattern of confusion, indicating trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1051 et

Queen City Tours® vs. Queen City Rides, et al.

Case No. [Pending]

seq. This long-term issue has notably impacted the Plaintiff's business and trademark distinctiveness.

2. Conclusion Regarding Defendant 2

Confusion incidents since 2021 against Defendant 2 affirm trademark infringement claims. This ongoing consumer misunderstanding about ghost tour services has harmed the Plaintiff's trademark rights and business.

3. Conclusion Regarding Defendant 3

Defendant 3's actions, especially via platforms like Tripadvisor, contribute to the confusion, misleading consumers about service origins, thereby affecting the Plaintiff's trademark and market stance.

## B. Overall Legal Implication with Historical Context

Evidence since 2017 for Defendant 1 and 2021 for Defendant 2, plus recent cases, highlight ongoing trademark infringement. This history demonstrates persistent consumer confusion, warranting action to protect the Plaintiff's marks. In discovery, the Plaintiff will quantify how many were misdirected to Defendants' sites after seeking "Queen City Tours®," seeking further evidence of confusion.

## C. Impact on Plaintiff

The incidences of public confusion detailed herein have caused substantial harm to the Plaintiff, both in terms of business operations and the reputation of the "Queen City Tours® Mark." This harm is cognizable under the Lanham Act, specifically under the provisions relating to trademark infringement and unfair competition (15 U.S.C. §§ 1114, 1125).

1. Economic Harm

Queen City Tours® vs. Queen City Rides, et al.

Case No. [Pending]

The Plaintiff has suffered, and continues to suffer, economic damage as a direct result of the Defendants' actions. These damages include, but are not limited to, lost sales, dilution of the Market share, and diversion of business. Such economic repercussions are a direct consequence of consumer confusion, leading to misdirected business opportunities that rightfully belong to the Plaintiff.

2.  Reputational Damage

The unauthorized use of the "Queen City Tours® Mark" by Defendants risks the mark's distinctiveness and reputation, as evidenced by *"Exhibit 26 (Negative Review, Facebook, Related Incident, dated January 21, 2022),"* showcasing potential harm from third-party confusion. This example underscores the need for protecting the Plaintiff's trademark rights to prevent similar reputational damage.

3.  Dilution of The Mark's Distinctiveness

Defendants' unauthorized use has diluted the "Queen City Tours® Mark," invoking the Lanham Act's dilution provisions (15 U.S.C. § 1125(c)), aimed at safeguarding famous marks' uniqueness. Despite The "Mark's" local fame and online presence, such dilution diminishes its distinctiveness and value, necessitating legal protection.

4.  Impact on Consumer Relations

Confusion from Defendants' similar mark has damaged Plaintiff's customer relationships, eroding trust and loyalty. This misattribution of negative experiences impacts the Plaintiff significantly, necessitating legal action to prevent further damage, compensate for harms, and protect the "Queen City Tours® Mark" reputation and value.

Queen City Tours® vs. Queen City Rides, et al.

Case No. [Pending]

## X. CAUSE OF ACTION FOR TRADEMARK INFRINGEMENT

### A. Legal Basis

*The legal foundation for the Plaintiff's cause of action for trademark infringement is* firmly rooted in the Lanham Act, specifically under 15 U.S.C. §§ 1114 and 1125(a). These statutes collectively provide the framework for addressing and remedying trademark infringement and unfair competition, which form the core allegations in this complaint.

1. Infringement Under 15 U.S.C. § 1114

    The Plaintiff alleges that the Defendants have infringed upon the Queen City Tours® registered trademark in violation of § 1114. This section prohibits the use in commerce of any reproduction, counterfeit, copy, or colorable imitation of a registered trademark in a manner that is likely to cause confusion or to deceive. The Defendants' use of a confusingly similar mark in connection with similar services constitutes a direct infringement under this provision.

2. False Designation of Origin and Unfair Competition under 15 U.S.C. § 1125(a)

    The Defendants' actions also constitute a false designation of origin and unfair competition under § 1125(a). This section of the Lanham Act extends protection against any use in commerce of any word, term, name, symbol, or device, or any combination thereof, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person. The Defendants' use of a mark similar to the "Queen City Tours® Mark" falsely suggests an affiliation or

Queen City Tours® vs. Queen City Rides, et al.

Case No. [Pending]

connection with the Plaintiff, misleading the public and damaging the Plaintiff's business interests.

3. Jurisdiction Under Federal Law

The Plaintiff asserts that this Court has jurisdiction over this matter as the alleged infringement involves a federally registered trademark and affects interstate commerce, thereby invoking federal question jurisdiction under 28 U.S.C. § 1331. The Plaintiff respectfully submits that these violations of the Lanham Act have caused significant harm, warranting relief as sought in this action. The legal precedents and statutory provisions underpinning this cause of action reflect the intent of Congress to protect trademark owners against infringement and the public against consumer confusion in the Marketplace.

**B. Impact on Licensing Plans**

Defendants' unauthorized use of "The Mark Queen City Tours®" has severely limited Plaintiff's licensing and expansion opportunities, eroding The Mark's distinctiveness. This has directly damaged Plaintiff's business model and licensing strategy, showing the need for judicial protection of Plaintiff's interests. *"See Exhibit 27 (Plaintiff's Advertisement for Licensees, pp. 1-3)."*

**C. Infringement Explanation**

In the present case, the Plaintiff's cause of action for trademark infringement is grounded on the premise that the Defendants have engaged in activities that constitute unauthorized use of a mark confusingly similar to the Plaintiff's federally registered trademark, Queen City Tours®, thereby causing consumer confusion, mistake, or deception as to the origin of the services

Queen City Tours® vs. Queen City Rides, et al.

Case No. [Pending]

offered under The "Mark." This conduct is in violation of federal trademark law, specifically the
Lanham Act.

1. Likelihood of Confusion

   Central to this claim is the principle of likelihood of confusion, as articulated in
   15 U.S.C. § 1114(1), which prohibits the use in commerce of any reproduction,
   copy, or colorable imitation of a registered mark in a way that is likely to cause
   confusion or mistake. The Defendants' use of a similar mark in connection with
   related services has created and is likely to continue to create confusion among
   consumers regarding the source or sponsorship of these services, misleading them
   to believe that there is an affiliation or connection with the Plaintiff.

2. Unfair Competition and False Designation of Origin

   Furthermore, under 15 U.S.C. § 1125(a), the Defendants' actions amount to unfair
   competition and false designation of origin. This statute protects against any use
   in commerce of any word, symbol, or device, or any combination thereof, which
   is likely to cause confusion as to the origin, association, or endorsement of goods
   or services. The Defendants' activities not only infringe upon the Plaintiff's
   trademark rights but also mislead the public regarding the origin and quality of
   the services offered under the infringing mark.

3. Harm to Plaintiff

   The Defendants' infringement has caused and will continue to cause substantial
   harm to the Plaintiff. This harm includes, but is not limited to, dilution of the
   distinctive quality of the Plaintiff's mark, erosion of goodwill, and financial losses
   due to diverted sales and business opportunities. The Plaintiff asserts that the

Queen City Tours® vs. Queen City Rides, et al.

Case No. [Pending]

Defendants' use of a confusingly similar mark constitutes a clear infringement of the Plaintiff's trademark rights under the Lanham Act. This infringement undermines the very essence of trademark protection, which is to prevent consumer confusion and protect the goodwill associated with a distinctive mark. Therefore, the Plaintiff seeks legal redress for these violations to protect its rights, prevent further consumer confusion, and hold the Defendants accountable for their infringing activities.

## XI. IMPACT OF WIDESPREAD USE OF 'QUEEN CITY' ON PLAINTIFF'S TRADEMARK

### A. Analysis of 'Queen City' Usage in Local Businesses

'Queen City's' frequent use in Charlotte doesn't detract from the distinctiveness of "Queen City Tours®," established in 1995. The trademark's specific association as a tour service is jeopardized by Defendants' similar use, leading to confusion. Safeguarding the Plaintiff's rights against such infringement is crucial.

### B. Distinction of Plaintiff's Trademark in The Marketplace

Since 1995, "Queen City Tours®" has signified top tour services in Charlotte, distinct from other 'Queen City' uses. Its prominence, rooted in targeted marketing and quality offerings, marks it as a reliable source, separate from Defendants' alike uses. This distinctiveness demands legal safeguarding to maintain its identity and avert confusion.

### C. Legal Implications of Widespread Term Usage

Queen City Tours® vs. Queen City Rides, et al.

Case No. [Pending]

The widespread use of 'Queen City' does not erode the distinctiveness of "Queen City Tours®." Its established uniqueness, despite potential generic perceptions, guards against similar infringing uses. Trademark law, safeguarding against confusion, upholds the Plaintiff's rights, maintaining its distinctive market presence.

## D. Comparative Market Harmony

Local tour operators, including Center City Carriage Tours, Charlotte Funny Bus, and Charlotte's Ultimate Southern Charm Historical City Cart Tour, have coexisted with "Queen City Tours®" for decades collectively without confusion. This harmony emphasizes the "Mark's" distinctiveness and consumer recognition, contrasting with Defendants' unique infringement impact, illustrating avoidability with market diligence.

## XII. REQUEST FOR RELIEF

**A. Jury Trial:** Formal request for a trial by jury.

**B. Cease and Desist Order, Damages, Legal Fees, and Costs**

Request for an order to stop further infringement, seeking maximum statutory damages, legal fees, and any applicable punitive damages.

## XIII. CONCLUSION, SIGNATURE AND DATE

In conclusion, continued infringement on "Queen City Tours®," protected under the Lanham Act since 1995, demands urgent judicial relief to enforce rights and protect the mark's distinctiveness and Plaintiff's goodwill. This highlights the necessity of safeguarding intellectual property against unauthorized use.

**Plaintiff's Signature:** _____  **Filing Date:** _3/14/2024_

Pro Se